**ROBERT L. SWAIN**
Attorney at Law
California State Bar No. 144163
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1494
Facsimile: (619) 544-1473
E-mail: rls11@aol.com

Attorney for Defendant **Aguilar-Pedrasa**

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

### (HON. DANA M. SABRAW)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 08-CR-1444-DMS |
| Plaintiff, | Date: September 12, 2008 |
| v. | Time: 11:00 a.m. |
| JOSE ALFREDO AGUILAR-PEDRASA, | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS** |
| Defendant. | |

**I.**

**STATEMENT OF FACTS**

The statement of facts and the facts discussed in the memorandum of points and authorities, are strictly for the purposes of these motions and are not to be considered admissions by the defendant, Mr. Aguilar-Pedrasa. Mr. Aguilar-Pedrasa reserves the right to contradict, explain, amplify, or otherwise discuss any of the facts mentioned here at a pre-trial motion hearing or trial.

Mr. Aguilar-Pedrasa was arrested by Border Patrol agents on March 27, 2008, near the international border in the Tecate area. Mr. Aguilar-Pedrasa was processed for release to Mexico, but at some point the determination was made to charge him criminally with deported alien found in the United States.

1    Mr. Aguilar-Pedrasa was subsequently indicted for one count of deported alien found
2 in United States in violation of 8 U.S.C. section 1326. He is currently in custody.

3    Mr. Aguilar-Pedrasa is alleged to have a single deportation, occurring in January of
4 2000. The hearing took place on January 27, 2000, when Mr. Aguilar-Pedrasa, whose date of
5 birth is June 25, 1982, was only seventeen years old and was in immigration custody. Instead
6 of having a regular hearing before an immigration judge, the hearing was conducted over the
7 telephone. Mr. Aguilar-Pedrasa had been charged with a single ground of deportation under
8 1182(a)(6)(A)(I), with having entered without inspection the year before.

9    The notice to appear, which is in English only, was apparently served on Mr. Aguilar-
10 Pedrasa on December 1, 1999, in Los Angeles, California. (See attached exhibit) There is no
11 indication that Mr. Aguilar-Pedrasa was advised of his right to contact the Mexican counsel.
12 At the time the form was signed, Mr. Aguilar-Pedrasa indicated that he wanted a review of
13 his custody determination, since the immigration officer had not set a bond amount. (See
14 attached exhibit). Instead of receiving a bond hearing, Mr. Aguilar-Pedrasa was taken in
15 custody over 1000 miles away and held somewhere near Seattle, Washington.

16    The only hearing then took place while Mr. Aguilar-Pedrasa was in jail and given a
17 phone call which turned out to have the immigration judge on the other end. Mr. Aguilar-
18 Pedrasa was not represented by counsel, had no family members present, and was in custody
19 somewhere in the state of Washington. The Immigration Judge, the notorious Anna S. Ho[1],
20 was in Seattle, Washington. No extra precautions were taken to ensure that Mr. Aguilar-
21 Pedrasa had a fair hearing, even though he was a juvenile under the law.

22    More importantly, neither before or after the immigration judge found Mr. Aguilar-

---

[1] See htttp://www.dailyjournal.com January 31, 2006 <u>Jurist's Asylum-Seeker rulings Earn Rebukes - 9th Circuit Rebukes Hard-Liner Judge on Unfairness to Asylum Seekers</u>, by John Roemer, "A federal appeals court, saying that Ho acted more like a prosecutor than a judge, overruled her....It was hardly an isolated incident. The 9th U.S. Circuit Court of Appeals has reversed Ho in favor of immigrants at least 11 times in her decade on the bench, and not just for technical legal mistakes. In one of the circuit's bluntly worded critiques, a three judge panel last year scolded Ho for 'improper hostility' toward some of the foreign citizens who appear in her courtroom."

2

Pedrasa removable, did the immigration judge explain to Mr. Aguilar-Pedrasa that he qualified for voluntary departure, or how to apply for voluntary departure. Instead, the government attorney erroneously claimed that Mr. Aguilar-Pedrasa had a prior conviction for drug sales and the immigration judge then summarily ruled out voluntary departure. However, Mr. Aguilar-Pedrasa had no such conviction, and of course could not have since he was still a juvenile.

## II.

### THE COURT SHOULD DISMISS THE INDICTMENT BECAUSE MR. CENTENO'S DEPORTATION IS INVALID.

**A.    Summary of Argument.**

Mr. Aguilar-Pedrasa was deported from the United States, and denied a full and complete hearing before an immigration judge ("IJ"), because even if he was removable on the grounds charged on the Notice to Appear, he was not treated as a minor for purposes of the proceedings as required, and he was not informed of his eligibility nor even considered for the relief of voluntary departure. These fundamental errors violated Mr. Aguilar-Pedrasa's due process rights because he was not given the due process he was entitled to as a minor. Moreover, he was not informed of the relief available to him.  As such, the government may not rely on Mr. Aguilar-Pedrasa's 2000 deportation in prosecuting him under 8 U.S.C. § 1326.  As there is no other removal the government may rely on in prosecuting him, other than the reinstatements that all on predicated on the 2000 deportation, Mr. Aguilar-Pedrasa moves this Court for an order dismissing the Indictment.

**B.    Due Process Requires That Mr. Aguilar-Pedraza Be Permitted To Challenge The Validity Of His Alleged Deportation.**

Pursuant to United States v. Mendoza-Lopez, 481 U.S. 828 (1987), Mr. Aguilar-Pedrasa enjoys the right collaterally to attack the prior deportation upon which the government relies in the indictment.  Id., at pp. 837-39; United States v. Mendoza-Gutierrez, 224 F.3d 1076, 1079 (9th Cir. 2000) (defendant can succeed if able to demonstrate that: 1)

3

his due process rights were violated by defects in underlying deportation proceeding, and 2) he suffered prejudice as a result of the defects); accord United States v. Proa-Tovar, 975 F.2d 592, 594 (9th Cir. 1992) (en banc); United States v. Leon-Leon, 35 F.3d 1428 (9th Cir. 1994); United States v. Bejar-Matrecios, 618 F.2d 81, 82 (9th Cir. 1980). This issue may be for the court. United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996) (en banc) (validity of prior deportation to be determined by the district court).

Under Mendoza-Lopez, "courts must entertain collateral attacks on deportation orders in prosecutions under 8 U.S.C. § 1326 *at least* when defects in the deportation proceeding effectively eliminated the right of the alien to judicial review or rendered the proceeding fundamentally unfair." United States v. Villa-Fabela, 882 F.2d 434, 439 (9th Cir. 1989), overruled on other grounds, Proa-Tovar, 975 F.2d at 595 (italics in original). The Ninth Circuit has also recognized that criminal defendants may also challenge deportations in which the alien was denied procedural protections that do not necessarily deprive the alien of the right to judicial review so long as the alien can show that he or she was prejudiced by the denial. Id.; accord Proa-Tovar, 975 F.2d at 595. The government bears the burden to prove that the deportation is lawful. United States v. Lopez-Vasquez, 1 F.3d 751, 754 (9th Cir. 1993).

Here, even though the immigration judge was faced with a Spanish speaking 17-year-old with limited education, who was in custody and was unrepresented, the immigration judge did not advise Mr. Aguilar-Pedrasa of his rights as a minor, or of his eligibility for relief.

**C.    Mr. Aguilar-Pedrasa's Deportation Is Defective.**

    **1.    Mr. Aguilar-Pedrasa was not treated as a minor.**

Shortly prior to the hearing, Mr. Aguilar-Pedrasa was served with a Notice to Appear [in English only] which charged Mr. Aguilar-Pedrasa with being subject to removal on the basis of being inadmissible for being present in the United States without having been admitted or paroled pursuant to section 212(a)(6)(A)(I). There was no doubt at the time that

Mr. Aguilar-Pedrasa was a minor at the time of the hearing, and yet the whole hearing took a few minutes over the telephone, with no procedural safeguards. Because Mr. Aguilar-Pedrasa was not treated as a minor, his due process rights were violated when he was found removable and the hearing was invalid *ab initio*.

"The Fifth Amendment guarantees due process in deportation proceedings." Colmenar v. INS, 210 F.3d 967, 971 (9th Cir.2000). Due process is required because

> the liberty of an individual is at stake . . . . We are dealing here with procedural requirements prescribed for the protection of the alien. Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty – at times a most serious one – cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness.

Bridges v. Wixon, 326 U.S. 135, 154 (1945). Proper notice is, of course, a fundamental element of due process. See, e.g., Groppi v. Leslie, 404 U.S. 496 (1972); In re Gustafson, 619 F.2d 1354 (9th Cir. 1980). At the time of Mr. Centeno's deportation hearing, 8 U.S.C. § 1229 required that an individual placed into removal proceedings be given proper notice of his rights and the charges against him. See 8 U.S.C. § 1229. In the past, an individual placed into removal proceedings must have been given "notice, reasonable under all the circumstances." See, e.g., former 8 U.S.C. § 1252(b).

The Ninth Circuit has literally construed the due process protections due to an alien during an immigration hearing:

> The IJ must ascertain that the alien has received a written notice of his appeal rights. Most importantly, the IJ must "read the factual allegations and the charges in the order to show cause to the [alien] and explain them in nontechnical language." 8 C.F.R. § 242.16(a). These procedures once again give the alien notice of the nature of the charges against him and guard the alien's privilege of representation. See 8 U.S.C. § 1252(b)(1), (2).

El Rescate Legal Services, Inc. v. Executive Office of Immigration Review, 959 F.2d 742, 749 (9th Cir. 1991). According to that same panel, "These procedures [at § 1252(b)] also provide the primary means by which the Attorney General ensures that the alien can exercise the reasonable opportunities afforded by 8 U.S.C. § 1252(b)(3)." Id. at 749; see also United States v. Leon-Leon, 35 F.3d 1428, 1431 (9th Cir. 1994) (holding that immigration judge's

failure to provide translation of removal proceeding prevented alien from exercising reasonable opportunities to show why he should not be deported and violated due process). Unless the statutory requisites for such hearings have been satisfied, an alien has not received the due process protection to which he is entitled. See Hirsch v. INS, 308 F.2d 562, 566-67 (9th Cir. 1962).

The immigration law has long mandated some procedural protections for minors and failure to provide these protections invalidates the removal proceeding. Mr. Aguilar-Pedrasa was seventeen years old at the time of his deportation hearing. He was a juvenile as defined under the Federal Juvenile Delinquency Act (FJDA), 18 U.S.C. § 5031 and as defined under the Code of Federal Regulations, 8 C.F.R §236 et seq. The Code of Federal Regulations in section 263.3 regulates the detention and release of juveniles.

Mr. Aguilar-Pedrasa was unrepresented at the time that he was deported. On the deportation tape, the Immigration Judge clearly states that Mr. Aguilar-Pedrasa appeared on his own behalf without representation. There was no one with Mr. Aguilar-Pedrasa, not a guardian, attorney, nor friend. Section 236.3 presumes that a bond will be set for the juvenile and that the juvenile will be released to a parent, legal guardian, adult relative, or some other responsible adult under special circumstances as quickly as possible. See 8 C.F.R § 236.3. If detention is found to be necessary, a Juvenile Coordinator is to find a suitable placement within a facility designed for accommodations. See Id. There is no evidence that any contact was made with a family member or even the consulate of Mexico to determine placement or assistance for this child. Instead, the IJ allowed Mr. Aguilar-Pedrasa, as a seventeen year old child, to represent himself at a deportation hearing.

The law further mandates, an Immigration Judge should not accept admissions of deportability from an unrepresented minor under the age of 18 who is not accompanied by a guardian, friend, or relative. See 8 C.F.R. 240.10(C); See also Davila-Bardales v. INS, 27 F.3d 1 (1st Cir. 1994). Again, the hearing clearly shows that Mr. Aguilar-Pedrasa was deported based upon his admission of deportability. In fact, no other information was even offered as proof of deportability other than the statements or admission of this minor.

1         Mr. Aguilar-Pedrasa was detained without bond and was deported after a deportation
2    hearing that lasted a few minutes.  His status as a minor was never even addressed even
3    though he was in custody at the time.  The Immigration Judge took admissions from him
4    **over the phone** regarding the basis for deportability without any specific questions about his
5    education, or need for accompaniment. The Immigration Judge further took an appellate
6    waiver from his which could not be knowing or voluntary due to his age and lack of
7    representation.
8         Lastly, pursuant to section 236.3(h) of the Code of Federal Regulations, a juvenile
9    alien *must be given* a form I-770, Notice of Rights and Disposition.  This form clearly shows
10   that a juvenile is eligible for voluntary departure.  See 8 C.F.R. §236.3(g)and (h).  This form
11   was not given to Mr. Aguilar-Pedrasa as it does not appear in A-file discovery from the
12   government nor was there any discussion of relief available to Mr. Aguilar-Pedrasa on his
13   deportation tape, relief which clearly would have been available to him at the time of his
14   "deport."  The IJ never even asked Mr. Aguilar-Pedrasa if he wished to be voluntarily
15   returned to Mexico.  For all of these reasons, Mr. Aguilar-Pedrasa was not afforded a full and
16   fair hearing and his prior deport was invalid.
17        Moreover, even if Mr. Aguilar-Pedrasa was an adult, he would have had the right to
18   contact consular officials, a right that was not given to him here. The INS is required to
19   advise a detained alien of his or right to "communicate with the consular or diplomatic
20   officers of his country of his or her nationality in the United States."  8 C.F.R. § 242.2(g).
21   Accord Villa-Fabela, 882 F.2d at 440; United States v. Cerda-Pena, 799 F.2d 1374, 1376 (9th
22   Cir. 1986).  Counsel is aware of no discovery provided thus far by the government that
23   indicates that Mr. Aguilar-Pedrasa was afforded this protection in his deportation.
24        This Court has repeatedly stated that the INS must strictly adhere to its regulations,
25   and the performance of its duties.  See Duran v. INS, 756 F.2d 1338, 1342 (9th Cir. 1985);
26   and Sun Il Yoo v. INS, 534 F.2d 1325, 1329 (9th Cir. 1976).  In Sun Il Yoo, the Court stated,
27        the Supreme Court has often emphasized, deportation is a drastic measure that
             may inflict 'the equivalent of banishment or exile,' and 'result in the loss of all
28           that makes life worth living.'  When such serious injury may be caused by INS

decisions, its officials must be held to the highest standards in the diligent performance of their duties.

Id., at p. 1329 (citations omitted). Both Duran, and Sun Il Yoo, involved evaluating the performance of the INS in the civil context. One would expect the same standard, if not a higher standard, to apply when a civil proceeding is being used as the basis of a felony prosecution. The record clearly shows that the IJ did not strictly follow the federal regulations and did not properly perform its duties.

It was the burden of the INS to hold a deportation that comports with due process and fundamental fairness. Instead, Mr. Aguilar-Pedrasa was summarily deported over the telephone without any of the procedural safeguards applicable to him. This was a clear violation of due process, and the indictment should be dismissed on these grounds alone.

**2. The IJ failed to advise Mr. Aguilar-Pedrasa that he was eligible for the relief of voluntary departure.**

Moreover, neither the immigration judge nor the government attorney advised Mr. Aguilar-Pedrasa that he was eligible for voluntary departure. Especially in light of the fact that the court was faced with a 17-year-old teenager, who was in custody, who had no legal representation, was required to use an interpreter, and who had limited education, and no familiarity with immigration law, the IJ should have presented Mr. Aguilar-Pedrasa with more information before ordering him deported.

At the time of his deportation[2] Mr. Aguilar-Pedrasa was neither an aggravated felon nor a national security risk. Accordingly, he was eligible for a voluntary departure, *see* 8 U.S.C. § 1229c, which is not a predicate for an 8 U.S.C. § 1326 offense. United States v. Ortiz-Lopez, 385 F.3d 1202, 1204, n.1 (9th Cir. 2004).

At the hearing, there is a claim that Mr. Aguilar-Pedrasa had a criminal conviction that may have had a bearing on voluntary departure, but there is no evidence that Mr. Aguilar-

---

[2] Mr. Aguilar-Pedrasa has been deported only once; his subsequent departures were reinstatements of the 2000 order of removal.

1  Pedrasa in fact had a conviction. Moreover, it is well-established that adjudication (if any) in
2  juvenile proceedings does not constitute a conviction for any immigration purposes,
3  regardless of the nature of the offense. The Board of Immigration Appeals consistently has
4  held "that juvenile delinquency proceedings are not criminal proceedings, that acts of
5  juvenile delinquency are not crimes, and that findings of juvenile delinquency are not
6  convictions for immigration purposes." Matter of Devison, Int. Dec. 3435 (BIA 2000)(en
7  banc).
8         An immigration judge must inform an alien of the alien's apparent eligibility for relief
9  from deportation. See United States v. Muro-Inclan, 249 F.3d 1180, 1183-84 (9th Cir. 2001);
10 Alvarez, 224 F.3d at 1079; Bui v. INS, 76 F.3d 268, 270 (9th Cir. 1996); Moran-Enriquez v.
11 INS, 884 F.2d 420, 422 (9th Cir. 1989); 8 C.F.R. § 242.17(a).  Specifically, "[t]he
12 immigration judge shall inform the respondent of his or her apparent eligibility to apply for
13 **any** of the benefits enumerated in this paragraph and shall afford the respondent an
14 opportunity to make application therefor during the hearing." 8 C.F.R. § 242.17(a)
15 (emphasis added).  The notice provision of this regulation is mandatory.  Alvarez, 224 F.3d at
16 1079; Bui, 76 F.3d at 271; Moran-Enriquez, 884 F.2d at 422.  In Moran-Enriquez, the Ninth
17 Circuit unequivocally stated that 8 C.F.R. § 242.17(a) is violated, "if an IJ fails to advise an
18 alien of an avenue of relief potentially available to him." Moran-Enriquez 884 F.2d at 422.
19        In Jacinto v. INS, 208 F.3d 725, 727-28 (9th Cir.2000), the Ninth Circuit considered
20 whether an alien's Fifth Amendment right to due process was violated by an immigration
21 judge's failure to explain to that alien the hearing's procedure and what that alien would have
22 to prove in order to qualify for the requested relief.  According to the Court, the "full and fair
23 hearing" requirement is not satisfied where the immigration judge provided an alien with
24 inadequate explanations of procedure.  Id.  The Court in Jacinto seized upon various
25 deficiencies deemed critical in providing a "full and fair hearing."  Foremost among them
26 was the immigration judge's "inadequate[] expla[nation] [of] the hearings' procedures to [the
27 alien]" and the failure to determine whether the alien understood the legal procedures
28 involved.  Id.; see also Agyeman v. INS, 296 F.3d 871, 883, n.9 (9th Cir. 2001) (noting that

for pro se aliens in immigration proceedings "it is the IJ's duty to outline [an alien's] procedural rights for him")..

Mr. Aguilar-Pedrasa's hearing was fundamentally flawed because the immigration judge did not explain anything about how to obtain voluntary departure, what factors would have to be considered, the importance of the relief, nor the consequences of being deported.

The indictment must be dismissed because the IJ failed to conduct a hearing that has even the most basic due process guarantees. "An underlying removal order is fundamentally unfair if: (1) [an alien's] due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." Ubaldo-Figueroa, 364 F.3d at 1048. Mr. Aguilar-Pedrasa can satisfy both of these prongs.

Unbeknownst to Mr. Aguilar-Pedrasa, he was actually eligible for "fast-track" voluntary departure pursuant to 8 U.S.C. § 1229c(a). This Court has characterized voluntary departure pursuant to section 1229c(a) as "fast-track" voluntary departure because the departure takes place before the completion of removal proceedings and requires a wholesale waiver of the alien's due process rights. Ortiz-Lopez, 385 F.3d at 1204 n.1 ("[section 1229c(a)] was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ('IIRIRA'), and permits 'fast-track' departure prior to the completion of removal proceedings"); In re Cordova, 22 I&N Dec. 966, 967-68 (BIA 1999) (additional requirements for a grant of fast-track voluntary departure include: 1) a request at or before initial master calendar hearing; 2) making no additional requests for relief; 3) conceding removability; and 4) waiver of appeal of all issues) (*citing* 8 C.F.R. § 240.26(b)(1)(i) (1998)).

An IJ's decision to grant a fast-track voluntary departure "expedites and reduces the cost of removal" for the government. Lopez-Chavez v. Ashcroft, 383 F.3d 650, 651 (7th Cir. 2004). Accordingly, an IJ has "broader authority to grant voluntary departure" under this section. Matter of Arguelles-Campos, 22 I&N, Dec. 811, 817 (BIA 1999). In fact, an "alien need not show that he has good moral character or that he has the financial means to depart the United States." *Id.* Immigration Judges typically use this form of relief to "quickly and

1  efficiently dispose of numerous cases on their docket." *Id.*

2  Section 1229c(a) is quite similar to the pre-IIRIRA fast-track voluntary departure provision of 8 U.S.C. § 1252(b), which also provided for expedited voluntary departures for aliens who had not been convicted of aggravated felonies and who were not national security risks. See United States v. Contreras-Aragon*, 852 F.2d 1088, 1094 (9th Cir. 1988) ("[Section 1252(b)] vests the Attorney General with discretion to award voluntary departure in lieu of *initiating* deportation proceedings.") (emphasis in original), *overruled on other grounds by* Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166 (9th Cir. 2003).

The court has characterized such fast-track departures as the "rough immigration equivalent of a guilty plea, in that the alien knowingly waives his rights to a hearing in exchange for the *certainty* of being able to depart voluntarily, rather than under an order of deportation." Contreras-Aragon*, 852 F.2d at 1094 (emphasis added) (internal quotation omitted). In fact, the court has held that such a departure is "available to an alien who knowingly waives his right to a deportation hearing in exchange for a *guarantee* of being able to depart voluntarily." Id*. (emphasis added).

The Ninth Circuit is not alone in observing that there is an overwhelming likelihood that an alien will receive a favorable exercise of an IJ's discretion under these circumstances. The U.S. Supreme Court has noted that "[a]rrested aliens are *almost always* offered the choice of departing the country voluntarily, 8 U.S.C. § 1252(b) . . . and as many as 98% of them take that course." Reno v. Flores*, 507 U.S. 292, 307 (1993) (emphasis added).

Outside of the clear prejudice shown above, Mr. Aguilar-Pedrasa does not have to show that he *would have been granted* relief from deportation, rather he must only show that *he had a "plausible" ground* for relief from deportation. United States v. Ubaldo-Figueroa, 347 F.3d 718, 726-727 (9th Cir. 2003) (citing United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000)). Moreover, it is the government's burden to demonstrate that the defendant does not have even a *plausible* claim that the due process violation could have changed the outcome of the removal proceeding. United

11

States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003).

In summary, Mr. Aguilar-Pedraza would have likely received discretionary relief had he been advised of his eligibility for a fast-track voluntary departure. At a minimum, the government could not possibly prove that Mr. Aguilar-Pedrasa had no *plausible* claim that the outcome of the removal proceeding *could* have been different. Accordingly, Mr. Aguilar-Pedrasa was prejudiced by the due process violation and this Court should dismiss the indictment.

### D. The Errors Excuse Mr. Aguilar-Pedrasa from the Exhaustion Requirement.

The exhaustion requirement of section 1326(d)(1) "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process." Ubaldo-Figueroa, 364 F.3d at 1048 (quoting United States v. Muro-Inclan, 249 F.3d 1180, 1183-84 (9th Cir.2001), cert. denied., 534 U.S. 879 (2001)). A waiver does not comport with due process if it is not "considered and intelligent." Id.

When the record in a deportation proceeding contains an inference that a petitioner is eligible for relief from deportation, the Ninth Circuit requires the Immigration Judge to "advise the alien of this possibility and give him the opportunity to develop the issue." United States v. Arrieta, 224 F.3d 1076, (quoting Moran-Enriquez v. INS, 884 F.2d 420, 422-23 (9th Cir.1989), and citing 8 C.F.R. § 242.17(a)); Bui v. INS, 76 F.3d 268, 270 (9th Cir. 1996); 8 C.F.R. § 242.17(a). Specifically, "[t]he immigration judge shall inform the respondent of his or her apparent eligibility to apply for any of the benefits enumerated in this paragraph and shall afford the respondent an opportunity to make application therefor during the hearing." 8 C.F.R. § 242.17(a). The notice provision of this regulation is mandatory. Arrieta at 1079; Bui at 271; Moran-Enriquez, 884 F.2d at 422.

Most importantly, under Ninth Circuit precedent, if the IJ advises the alien he is

1  <u>not</u> eligible for relief when, in fact, he <u>is</u> eligible for relief, the alien's waiver of his

2  right to appeal is categorically not "considered and intelligent," and thus did not

3  comport with due process.  See <u>Pallares-Gallan</u>, 359 F.3d at 1096 (alien's waiver of

4  right to appeal was not considered and intelligent because IJ erroneously advised him

5  he was ineligible for discretionary relief); <u>United States v. Leon-Paz</u>, 340 F.3d 1003,

6  1007 (9th Cir. 2003) (same).  This is exactly what happened in this case.  Because the

7  immigration judge erroneously determined that Mr. Aguilar-Pedrasa was not eligible

8  for relief, any waiver of his right to appeal could not be considered and intelligent.

9  Moreover, Mr. Aguilar-Pedrasa was unrepresented, in custody, not fluent in English

10 and only 17 years old Therefore, Mr. Aguilar-Pedrasa is excused from any exhaustion

11 requirement.

12         "Effective deprivation of an alien's administrative appeal serves to deprive him

13 of the opportunity for judicial review as well." <u>Pallares-Galan</u>, 359 F.3d at 1096

14 (citing <u>United States v. Mendoza-Lopez</u>, 481 U.S. 828, 840 (1987) ("Because the

15 waivers of their rights to appeal were not considered or intelligent, respondents were

16 deprived of judicial review of their deportation proceeding.")).  The IJ's erroneous

17 determination that Mr. Aguilar-Pedrasa was ineligible for relief caused any waiver of

18 appeal rights to be inconsistent with due process. This due process violation also

19 deprived him of meaningful judicial review.  See <u>id.</u>; <u>Leon-Paz</u>, 340 F.3d at 1005.

20         In sum, Mr. Aguilar-Pedrasa's due process rights were violated at his telephonic

21 removal proceedings in 2000.  He suffered prejudice as a result of that due process

22 violation.  The government may not therefore use Mr. Aguilar-Pedrasa's 2000 removal

23 as a basis for its prosecution.  As there is no other removal orders on which the

24 government may rely, Mr. Aguilar-Pedrasa requests that this Court dismiss the

25 indictment against him.

26

27

28

## III.

## **REQUEST FOR LEAVE TO FILE FURTHER MOTIONS**

Mr. Aguilar-Pedrasa has received discovery from the government and anticipates that the ruling on this motion may resolve the case, and has therefore limited this motion to the single issue of dismissal of the indictment. Mr. Aguilar-Pedrasa therefore requests that he be allowed time to file additional motions if necessary.

## IV.

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the court grant the above motions.

Respectfully submitted,

Dated: August 14, 2008
/s/  Robert L. Swain
**ROBERT L. SWAIN**
Attorney for Defendant **Aguilar-Pedrasa**